**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAUL GOMEZ<br>Petitioner,<br><br>v.<br><br>DEANNA BROOKHART[1]<br>Respondent. | No. 13-cv-007762<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Raul Gomez petitions for a writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the amended petition is denied and a certificate of appealability will not issue under 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

## I. Factual Background

When considering § 2254 habeas petitions, federal courts must presume as correct the factual findings made by the last state court to decide the case on the merits unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). Where Gomez has not provided clear and convincing evidence to rebut this presumption, the

[1] Respondent reports that Gomez has been transferred to a facility outside of Illinois for security reasons. [82] at 1. Accordingly, Kwame Raoul, Attorney General of Illinois, shall be substituted as respondent, where Gomez may be transferred back to Illinois to continue serving his sentence.

following factual background is based on the Illinois Appellate Court's findings in *People v. Gomez*, 931 N.E.2d 1235 (Ill. App. 2010).

Following a jury trial, Gomez was convicted of first-degree murder and attempted first-degree murder and sentenced to terms of 50 and 40 years imprisonment. The charges arose from an incident wherein Rafael Trujillo was fatally shot and Luis Aguirre sustained nonfatal gunshot wounds. In October 2005, Aguirre lived at 6217 South Talman in Chicago, Illinois. On several occasions, Aguirre complained to his neighbor about young people congregating on and near his property. According to Aguirre, people were hanging out on Aguirre's porch in his absence and leaving bottles in his bushes.

On October 8, 2005, Aguirre and Trujillo attended a birthday party in Schaumburg, Illinois. They consumed six or seven beers over the course of two to three hours at the party. On the way home from the party, they stopped at a bar and drank a "couple" more beers. Aguirre testified that he was "buzzed," and denied that Trujillo was drunk. They returned to Aguirre's home around 1:40 a.m. Trujillo exited the car, leaving the keys inside with the engine running.

Aguirre saw people congregating on his porch and the surrounding area. He was angry and began yelling at the people to get off his property. Aguirre returned to Trujillo's car to retrieve the keys because he was concerned someone would try to take the vehicle. As Aguirre was yelling and swearing at the group, Gomez walked up to Aguirre and asked him if he knew who he was. Gomez put a gun against Aguirre's chest and fired. Aguirre fell to the ground and heard additional shots. Trujillo, who

was standing behind Aguirre, was also shot and subsequently died. Aguirre and Trujillo were unarmed during the confrontation.

Gomez testified that as Trujillo and Aguirre were yelling at the group to leave, Gomez and his friends were collecting their beer and getting ready to leave the area. Gomez's fiancé told him to "watch out" because one of the men was "getting something" from the car. Gomez turned towards the car and saw Aguirre "underneath the passenger seat" of Trujillo's car. Gomez heard someone mention something about calling the police, and Aguirre responded in a way that implied he did not need the police. One of Gomez's friends handed him a gun and Gomez approached and shot Aguirre. Gomez testified that he did not see a gun, but that Aguirre "reached for his back behind his jacket." Gomez then shot at Trujillo because he was approaching and "reaching for his shirt." Gomez testified that based upon the trip to the car, the reaching into their shirts, and his experiences growing up in the city, he assumed they were pulling guns on him so he shot first. Aguirre did not explicitly threaten Gomez, but Gomez testified that he took Aguirre's "motions" as a threat.

Gomez testified that Aguirre touched him at one point during their interaction. He described it as follows: "He grabbed me by the arm but it was nothing like fighting type, it was more like trying to treat me like a little kid or something." At no point did Aguirre strike or hit Gomez.

The trial court instructed the jury on both self-defense and second-degree murder premised on imperfect self-defense. The court refused to instruct the jury on second-

degree murder based on provocation. The jury convicted Gomez of first-degree murder and attempted first-degree murder.

## II. Procedural Background

On direct appeal to the Illinois Appellate Court, Gomez argued that the trial court erred in: (1) denying his motion in limine to limit cross-examination of a defense witness; (2) allowing the introduction of his prior conviction; (3) refusing to instruct the jury on second degree murder based on provocation; and (4) limiting the scope of his testimony. *Gomez*, 931 N.E.2d at 1238. The appellate court rejected each claim. Gomez filed a petition for leave to appeal to the Illinois Supreme Court, seeking review of the appellate court's decision on the jury instruction issue. The Illinois Supreme Court denied leave to appeal. *People v. Gomez*, 226 N.E.3d 28 (Table) (Ill. 2010).

On May 24, 2011, Gomez filed a post-conviction petition which raised the following three claims: (1) trial counsel was ineffective for not presenting a photo of Trujillo's keys in the ignition; (2) the trial court erred in refusing to instruct the jury on second-degree murder based on provocation; and (3) Gomez's sentence violated the Illinois Constitution. [84-6] at 11-12. The trial court summarily dismissed the petition as frivolous and patently without merit. [84-7] at 4.

Gomez appealed and raised the same claims. [84-8] at 20-25. The appellate court affirmed. [85-1] at 1. The appellate court held Gomez's ineffective assistance of trial counsel claim and sentencing claim were meritless, and his jury instruction claim was barred by *res judicata* where it had been decided on direct appeal. *Id.* at 4-6.

Gomez filed a petition for leave to appeal which raised his ineffective assistance and jury instruction claims. [85-2] at 16-18. The Illinois Supreme Court denied leave to appeal. *People v. Gomez*, 982 N.E.3d 771 (Table) (Ill. 2013).

On October 30, 2013, Gomez filed a timely petition for a writ of habeas corpus. [1]. Gomez filed a motion to stay these proceedings to allow him to return to state court to pursue a successive post-conviction petition. [4]. Respondent did not object, and the Court granted Gomez's motion. [9]; [12].

On May 15, 2023, Gomez filed a motion for leave to file a successive post-conviction petition. [85-4]. The proposed successive petition alleged, among other things, that (1) trial counsel was ineffective for failing to properly advise Gomez on plea negotiations; (2) appellate counsel was ineffective for not arguing on direct appeal that trial counsel was ineffective for failing to introduce a photograph that showed Trujillo's keys in the ignition; and (3) Gomez's sentence violated the Illinois Constitution and the Eighth Amendment to the United States Constitution under *Miller v. Alabama*, 567 U.S. 460 (2012). [85-4] at 7-44. The trial court denied leave to file the successive petition. [85-5] at 12.

On appeal, Gomez argued that trial counsel was ineffective for advising Gomez to reject a 31-year plea offer and that his sentence violated the Illinois Constitution. [85-6] at 10-19. On September 26, 2025, the appellate court affirmed, holding that Gomez failed to demonstrate the cause and prejudice required to file a successive post-conviction petition. [85-8] at 1. Gomez did not file a petition for leave to appeal to the Illinois Supreme Court.

## III. Amended Habeas Petition

On December 16, 2025, Gomez filed an amended habeas petition in this Court. Gomez's amended petition raises the following claims: (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) trial counsel was ineffective for failing to (a) present a photo showing Trujillo's keys in the ignition which would have corroborated Gomez's self-defense claim; (b) properly advise Gomez regarding a plea offer; and (c) adequately prepare for trial; (3) appellate counsel was ineffective on direct appeal for failing to raise trial counsel's ineffectiveness; (4) the trial court violated Gomez's due process rights by refusing to instruct the jury on second degree murder based on provocation; and (5) Gomez's sentence violates the Eighth Amendment. [76] at 5-16.

## LEGAL STANDARDS

"A federal habeas corpus petitioner is required to exhaust his available state remedies before seeking federal relief." *Lisle v. Pierce,* 832 F.3d 778, 785 (7th Cir. 2016) (citing 28 U.S.C. § 2254(b)(1)(A)). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). More specifically, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). If a habeas petitioner fails to fully and fairly present his federal claims through one full round of state court review, he has procedurally defaulted his

claims. *Tabb v. Christianson,* 855 F.3d 757, 765 (7th Cir. 2017). Additionally, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). Procedural default precludes federal courts from reviewing the merits of a petitioner's habeas claims. *Thomas v. Williams,* 822 F.3d 378, 384 (7th Cir. 2016).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the federal court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536 (2006). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496; *see also Hicks v. Hepp,* 871 F.3d 513, 531 (7th Cir. 2017).

A Court cannot grant habeas relief unless the state court's decision was contrary to or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03 (2000); *Pinno v. Wachtendorf,* 845

F.3d 328, 331 (7th Cir. 2017). The Supreme Court has explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407.

When a district court enters a judgement on a habeas petition, it must also deny or grant a certificate of appealability. 28 U.S.C. § 2253(c). Such a certificate will only be issued if the applicant has made a "substantial showing of denial of constitutional right." *Id.* Or, as the Supreme Court puts it, "[w]here a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## ANALYSIS

### I. Procedural Default

#### A. Fully and Fairly Present—One Complete Round of Appellate Review

Respondent argues that all but one of Gomez's claims are procedurally defaulted because he did not fully and fairly present these claims through one complete round of state court review. *See Hicks,* 871 F.3d at 530 ("petitioner must 'fairly present' his constitutional claims through at least one complete round of the state's established

appellate review process before presenting the claims to a federal court for habeas review."). More specifically, Respondent highlights the following claims in Gomez's amended petition: (1) the evidence was insufficient; (2)(b) trial counsel was ineffective for failing to properly advise Gomez regarding a plea offer; (2)(c) trial counsel was ineffective for failing to adequately prepare for trial; (3) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal; (4) the trial court erred in refusing to instruct the jury on second-degree murder based on provocation; and (5) Gomez's sentence is unconstitutional. [82] at 9-11.

Gomez presented claims (2)(b), (2)(c), (3), and (5) in his motion for leave to file a successive petition, but he did not petition the Illinois Supreme Court for leave to appeal those claims. Further, Gomez did not present claim (1)—that the evidence was insufficient to sustain his conviction—in his direct appeal, initial post-conviction petition, or motion for leave to a file a successive post-conviction petition. *Gomez*, 931 N.E.2d at 1238 ("Defendant does not challenge the sufficiency of the evidence"); [84-6] at 11-12; [85-4] at 7-44. As such, none of these five claims have been presented through one full round of state court review and are therefore procedurally defaulted. *See Brown v. Brown*, 847 F.3d 502, 517 (7th Cir. 2017) ("A federal court will not hear a state prisoner's habeas claim unless the prisoner has first presented it to the state courts for one full round of review.").

Respondent further argues that though Gomez presented claim (4)—the trial court's refusal to instruct the jury on second-degree murder based on provocation—through a complete round of state court review, he did not "fairly" present the claim

because it had no federal constitutional basis. Respondent notes that when Gomez raised this claim on direct appeal and in his initial post-conviction petition he cited neither the United States Constitution nor cases applying the federal Due Process Clause. Instead, Gomez relied entirely on Illinois law to argue that he was entitled to the instruction. [84-1] at 26-30; [84-4] at 17-20; [84-6] at 12; [84-8] at 23-25.

"Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). "In the interests of federal-state comity, both the operative facts and controlling law must be put before the state courts." *Anderson v. Benik*, 471 F.3d 811, 814-15 (7th Cir. 2006) (where petitioner's state court claim relied solely on a state statute and did not assert that statutory error resulted in a due process violation, petitioner did not fairly present federal claim); *see also Riggins v. McGinnis*, 50 F.3d 492, 493-94 (7th Cir. 1995) (if "a habeas petitioner wishes to claim that [a] ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court" because it is "essential . . . that the state court be alerted to the fact that [a petitioner is] asserting claims under the United States Constitution.").

*Perruquet v. Briley*, 390 F.3d 505 (7th Cir. 2004) is instructive. In *Perruquet*, the Seventh Circuit held that a habeas petitioner procedurally defaulted a self-defense instruction claim because he did not argue in the state courts that the failure to give the instruction violated his federal due process rights. *Id.* at 518-19. The Court

emphasized that its ruling aligned with principles of federalism and comity. *Id.* at 518. "[I]f we were to reach the merits of Perruquet's constitutional claim, we necessarily would have to do so *de novo*, as there is no state-court decision we can look to for an evaluation of this claim." *Id.* "This would be inconsistent with the high level of deference to state-court decisions that Congress mandated when it passed the Antiterrorism and Effective Death Penalty Act of 1996," particularly where "[t]he Illinois courts [ ] have a much greater familiarity than we do with Illinois law and the requirements it imposes on claims of self-defense [and] are better situated in the first instance to identify those requirements and to consider whether they actually interfered with Perruquet's right to a fundamentally fair trial." *Id.* at 518-19.

Here, like in *Perruquet*, Gomez failed to argue the federal basis for his instruction claim in the state courts. Instead, he argued—both on direct appeal and in his initial post-conviction petition—that he was entitled to an instruction on second-degree murder premised on provocation under Illinois law. [84-1] at 26-30 (direct appeal brief); [84-4] at 17-20 (petition for leave to appeal); [84-6] at 12 (initial post-conviction petition); [84-8] at 23-25 (appellate brief). Where jury instruction claims typically "turn on state law," Illinois courts were better situated to evaluate the federal claim Gomez now brings for the first time on federal habeas review. *See Perruquet*, 390 F.3d at 511, 518-19. As the Seventh Circuit observed in *Perruquet*, principles of federalism and comity necessitate a finding that Gomez's jury instruction claim is procedurally defaulted where he presented no federal basis for the claim before the state courts.

For these reasons, Gomez's claims (1), (2)(b), (2)(c), (3), (4), and (5) are procedurally defaulted.

**B. Independent and Adequate State Law Grounds**

Respondent further argues that the claims Gomez presented in his motion for leave to file a successive post-conviction petition—claims (2)(b), (2)(c), (3), and (5)—are also defaulted where the state court's ruling on those claims rested on an independent and adequate state law ground. [82] at 12-13. The trial court denied Gomez leave to file a successive petition which raised these four claims because he failed to demonstrate cause for his failure to raise the claims in his initial post-conviction petition. [85-5] at 6-11. The court also found that Gomez failed to establish prejudice. *Id.* The appellate court affirmed on the same basis. [85-8] at 1. The state courts' finding that Gomez failed to satisfy the cause and prejudice test under Illinois law is an adequate and independent state ground precluding habeas review. *See Thomas v. Williams*, 822 F.3d 378, 384-85 (7th Cir. 2016) (a determination that a petitioner has failed to demonstrate cause and prejudice to file a successive post-conviction petition is an application of a "state procedural rule" and constitutes "an adequate and independent state ground precluding federal habeas review."); *see also Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) ("when a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review").

As such, in addition to being procedurally defaulted for failure to pursue one full round of state court review, the claims presented in Gomez's successive petition—(2)(b) trial counsel's ineffectiveness in advising about a plea offer, (2)(c) trial counsel's ineffectiveness in preparing for trial, (3) appellate counsel's ineffectiveness, and (5) the unconstitutionality of his sentence—are further defaulted where the state courts' rulings rest on an adequate and independent state law ground.

### C. Exceptions to Procedural Default

The Court may reach the merits of a petitioner's procedurally defaulted claims if he can demonstrate cause for the default and actual prejudice, or show that the Court's failure to consider the claims would result in a fundamental miscarriage of justice. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010). Here, Gomez does not argue cause and prejudice, nor does he argue that the fundamental miscarriage of justice exception applies. Accordingly, the Court does not reach the merits of Gomez's defaulted claims.

## II. Claim 2(a)—Counsel's Failure to Present Photo at Trial

The Court reaches the merits of Gomez's remaining ineffective assistance of trial counsel claim. Gomez argues that trial counsel provided ineffective assistance by failing to present at trial a photo of the inside of Trujillo's car which showed his keys still in the ignition.[2] [76] at 8-9. According to Gomez, this photo would have

---

[2] Gomez does not attach the photo to his amended petition. [76]. His reply suggests that the photo may have been destroyed by police. [86] at 10-11. No such claim has been presented to the state courts. In fact, the appellate court, in affirming the dismissal of Gomez's initial post-conviction petition, noted that Gomez did not

corroborated his self-defense claim. *Id.* at 8. Gomez testified that at some point during the confrontation on October 8, 2005, he and his fiancée saw Aguirre return to Trujillo's car which was parked on the street. *Gomez*, 931 N.E.2d at 1242. Aguirre testified that he returned to Trujillo's car to retrieve the keys because he was concerned someone would try to take the vehicle. *Id.* at 1239. Gomez believed that Aguirre was arming himself with a gun. *Id.* at 1243. According to Gomez, "[h]ad counsel done a competent job, the evidence portrayed in that photograph would have further corroborated [Gomez's] testimony" and "the jury would have believed that Gomez's testimony was truthful." [76] at 8-9.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03 (2000); *Pinno v. Wachtendorf*, 845 F.3d 328, 331 (7th Cir. 2017). A petitioner must "show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Needless to say, the AEDPA standard of review is a difficult standard, and it was meant to be." *Baer v. Neal*, 879 F.3d 769, 776 (7th Cir. 2018).

---

attach the photo "or otherwise explain why it was not attached to the petition." [85-1] at 5. As such, when ruling on this petition, the Court does not consider any claim that police may have destroyed the photo.

To establish a denial of his Sixth Amendment right to effective assistance of counsel, Gomez must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "It is especially difficult to prevail on an ineffective assistance of counsel claim in federal habeas because *Strickland* and § 2254(d) together create 'doubly deferential judicial review.'" *Williams v. Jackson*, 964 F.3d 621, 629 (7th Cir. 2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Gomez fails to demonstrate that the state courts unreasonably applied *Strickland* in rejecting his ineffective assistance of counsel claim.

The last state court to make a substantive ruling on Gomez's ineffective assistance claim was the Illinois Appellate Court when it affirmed the dismissal of Gomez's initial post-conviction petition. [85-1]. The court held that counsel was not ineffective where Gomez "failed to explain . . . how a photograph depicting the ignition key of Trujillo's vehicle in the ignition after the shooting would have supported his claim of self-defense." *Id.* at 4. Gomez's theory at trial was that he acted in self-defense, or alternatively, was guilty of second-degree murder where he unreasonably believed in the need to defend himself. *Id.* at 3. But the appellate court found Gomez's claim "that the presence of the ignition key in the vehicle was proof that a victim went to the vehicle to get a gun, was conjectural and irrelevant to any self-defense claim since no evidence was adduced at trial that either Aguirre or Trujillo had a weapon." *Id.* at 5. Erica Lujano testified that she did not see anything in Aguirre's hands after he reached into the vehicle. *Id.* Other witnesses testified that neither victim had a

gun. *Id.* Gomez acknowledged during his trial testimony that he did not see a gun in either Aguirre or Trujillo's hands. *Id.* And no gun was found on either victim or shown to have been in Trujillo's car. *Id.* Accordingly, the court found that a photo of Trujillo's keys in the ignition could not "overcome the evidence in the record positively rebutting [Gomez's] self-defense claim as a matter of law." *Id.* As a result, the court held that trial counsel was not ineffective for failing to present the photo. *Id.*

This decision was not contrary to or an unreasonable application of the controlling legal standards set forth by the Supreme Court in *Strickland*. Under *Strickland*, Gomez was required to prove both "that counsel's performance was deficient," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 669. The appellate court's decision that Gomez failed to satisfy either prong of *Strickland* was not unreasonable where a photo of Trujillo's keys in the ignition would not have advanced Gomez's theory that he acted in self-defense or that he was, at most, guilty of second-degree murder. Even if the photo would have contradicted Aguirre's testimony that he returned to the car to retrieve the keys, it would not have shown that Aguirre or Trujillo were armed, or that Gomez believed the victims were armed. As such, counsel's decision not to present the photo did not fall "below an objective standard of reasonableness." *Id.* ("[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Likewise, Gomez did not show a reasonable probability that

the result of his trial would have been different had the photo been presented. *See id.* ("a reasonable probability is a probability sufficient to undermine confidence in the outcome" of a proceeding). Accordingly, the appellate court's decision rejecting Gomez's ineffective assistance of counsel claim was not contrary to or an unreasonable application of federal law clearly established by the Supreme Court. Gomez's ineffective assistance claims fails.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell,* 537 U.S. 322, 336, (2003); 28 U.S.C. § 2253(c)(2). For the reasons articulated above, Gomez has not made a substantial showing of the denial of his Sixth Amendment right to the effective assistance of counsel. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("[w]here a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate the reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"). As such, the Court declines to issue a certificate of appealability as to claim 2(a).

Where a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 485. Here, Gomez has not established that reasonable jurists would debate that claims (1), (2)(b), (2)(c), (3), (4), and (5) are procedurally defaulted. *See id.* at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case," the claim is not debatable). As such, the Court declines to certify any of these issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## IV. Conclusion

For the reasons stated herein, Petitioner's amended petition under 28 U.S.C. § 2254 for a writ of habeas corpus [76] is denied, and the Court declines to issue a certificate of appealability. Civil case terminated.

E N T E R:

Dated: September 4, 2026

Mary M Rowland

MARY M. ROWLAND
United States District Judge